**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

RICHARD MULLARKEY,

                    Appellant,

v.

LEONARD TAMBOER, ET AL.

                    Appellees.

Civ. No. 09-4518 (DRD)

**O P I N I O N**

*Appearances by:*

RICHARD MULLARKEY
109 Halsey Road
Newton, NJ 07860

      *Pro Se* Appellee

HACK, PIRO, O'DAY, MERKLINGER, WALLACE & McKENNA
by: Kathleen B. Riordan, Esq.
30 Columbia Turnpike, P.O. Box 941
Florham Park, NJ 07932

      *Attorneys for Appellees*

**DEBEVOISE, Senior District Judge**

      Appellee Richard Mullarkey brings this action as a challenge to the August 11, 2009

ruling of the United States Bankruptcy Court for the District of New Jersey dismissing with

prejudice his claims against the Appellees, Leonard Tamboer, Leslie Tamboer, and John M.

McKenna.  Mr. Mullarkey filed notice of his appeal from the Bankruptcy Court's decision on

August 17, 2009, but did not submit a designation of items to be included in the record and statement of issues presented as required by Federal Rule of Bankruptcy Procedure 8006.  In light of his failure to do so, the Court on September 10, 2009 entered an Order dismissing the appeal.

On September 22, 2009, Mr. Mullarkey filed a letter arguing that this Court's dismissal of his appeal was a "miscarriage of justice."  The Court informed the parties that it would construe that letter as a Motion for Reconsideration of its September 10, 2009 Order dismissing Mr. Mullarkey's appeal.  Appellees timely filed a brief in opposition to that motion, while Mr. Mullarkey on October 16, 2009 – three days before the motion's return date – submitted a letter and various attachments arguing that the Bankruptcy Judge who issued the ruling below harbors a personal grudge against him.  Mr. Mullarkey did not incorporate a designation of items to be included in the record or statement of issues presented in either his September 22nd or October 16th submission, and as of the time of this ruling has made no attempt to satisfy Bankruptcy Rule 8006 by submitting a supplemental filing.

For the reasons set forth below, Mr. Mullarkey's Motion for Reconsideration of the September 10, 2009 Order dismissing his appeal will be denied.  Mr. Mullarkey is obviously aware of the requirements of Federal Rule of Bankruptcy Procedure 8006.  He has filed numerous pro se appeals from the action below.  In fact, Mr. Mullarkey complied with the requirements of Bankruptcy Rule 8006 in his appeal from the Bankruptcy Court's January 12, 2005 denial of various motions.  Even in the unlikely event that his prior appeals did not familiarize him with the requirements of Bankruptcy Rule 8006, Mr. Mullarkey was notified of those requirements in this case by the Court's dismissal order and the Appellees' September 11, 2009 Motion to Dismiss.  Despite knowing that he was obligated to do so, however, Mr.

Mullarkey has refused to file a designation of items to be included in the record and statement of issues presented on appeal.  Instead, he has leveled unsupported charges of bias against the Bankruptcy Judge presiding over the proceeding below and argued without any legal or factual support that the dismissal of his claims in that proceeding was a violation of his constitutional rights.  Such unsupported assertions cannot serve as a proper basis for Reconsideration.

Even if the Court were to reconsider its September 10, 2009 Order and address the merits of his appeal, dismissal would be an appropriate remedy, as Mr. Mullarkey's factual allegations are insufficient to state a cognizable claim against any individual.  Despite repeated opportunities to do so, Mr. Mullarkey has refused to amend or clarify his Complaint to add the necessary information to sustain a claim.  Therefore, consideration of the merits of those claims would result in dismissal with prejudice.

In addition to his appeal from the Bankruptcy Court's August 11, 2009 dismissal of his claims, it appears that Mr. Mullarkey also has pending an appeal from the Bankruptcy Court's January 12, 2005 denial of four motions submitted in the adversary proceeding below.  Given the long and complicated history of the adversary proceeding below, the Court believes it prudent to dispose of that appeal in this ruling.  For the reasons set forth below, the Bankruptcy Court's January 12, 2005 Order will be affirmed, and Mr. Mullarkey's claims dismissed with prejudice in their entirety.

## I.  BACKGROUND

The tangled bramble of this action's ten-year history has been complicated by Mr. Mullarkey's repeated refusal to abide by the rules of procedure, clearly articulate his claims, or submit any evidence in support of his allegations.  The developments that occurred prior to July 31, 2008 were succinctly set forth by the Court of Appeals in its decision issued on that date.

See In re Mullarkey, 536 F.3d 215, 218-220 (3d Cir. 2008).  This Court will incorporate the background section of that ruling.  Because a full understanding of the unique procedural context of this appeal is essential to today's ruling, some of the facts contained in that decision will be repeated below.

The dispute between the parties arises out of an arrangement in which Mr. Mullarkey and the Tamboers each owned an undivided one-half interest in a parcel of property known as "The Princeton Estates," or 86 Branchville Road, Hampton Township, New Jersey.  In 1990, the parties reached an agreement whereby the Tamboers were obligated to make payments on a prior mortgage on Mr. Mullarkey's portion of the property.  Under the agreement, the Tamboers would hold their own mortgage on Mr. Mullarkey's portion of the property, and he would make payments on that mortgage directly to them.  After Mr. Mullarkey defaulted on his payments in 1997, the Tamboers instituted a foreclosure action in New Jersey state court.  Mr. Mullarkey did not oppose that action, and the state court entered a default judgment of foreclosure on March 25, 1999.  Before a sheriff's sale of the property could take place, however, Mr. Mullarkey filed a Chapter 13 bankruptcy petition, which triggered an automatic stay of the foreclosure proceedings.

Alleging that Mr. Mullarkey had not made scheduled payments on the mortgage during the pendency of his bankruptcy action, the Tamboers on April 17, 2000 filed a motion seeking relief from the automatic stay.  After Mr. Mullarkey failed, despite receiving an extension of time, to obtain municipal approval to subdivide and sell his interest in the property, the Bankruptcy Court on March 13, 2001 issued an Order granting the Tamboer's motion and lifted the stay of foreclosure proceedings.  As stated by the Court of Appeals, that order was "brief and d[id] not suggest the basis on which the court granted relief from the stay," but the Bankruptcy

Court presumably did so due to Mr. "Mullarkey's continued failure to make his regular monthly mortgage payments outside of his Chapter 13 plan, as well as his failure to sell his interest in the property." Id. at 227.

Following that ruling, Mr. Mullarkey petitioned three different tribunals to have the stay reimposed: he (1) filed an appeal to this Court, (2) sought to stay the sheriff's sale in state court, and (3) made an application to the Bankruptcy Court requesting that it vacate the order lifting the stay. All three applications were denied. The Bankruptcy Court's ruling denying Mr. Mullarkey's motion to vacate the Order lifting the stay was issued by means of an Order "as brief as the first, and with similar lack of explanation." Id. at 228 n.11.

On December 2, 2003, Mr. Mullarkey filed a pro se Complaint in this Court, in which he alleged that (1) the Tamboers had committed fraud on the Bankruptcy Court while pursuing their request that the automatic stay of foreclosure proceedings be lifted, and (2) had engaged in "several acts of racketeering" in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1861 et seq.[1] After determining pursuant to 28 U.S.C. § 157(a) that Mr. Mullarkey's claims were related to the Bankruptcy proceeding, this Court referred the matter to Bankruptcy Court so that they could be dealt with as part of the action below.

**A. Initial Bankruptcy Court Proceedings**

On April 8, 2004, Mr. Mullarkey filed an Amended Complaint in the Bankruptcy Court adding Mr. McKenna and David Gherlone as Defendants. Mr. Mullarkey asserted that both of those individuals withheld evidence of the Tamboers' criminal intent regarding the sale of the property from the Bankruptcy Court. The claims against Mr. Gherlone were dismissed on October 18, 2004. Thus, only the Tamboers and Mr. McKenna remain parties to the action.

---

[1] Mr. Mullarkey filed an identical Complaint in the Bankruptcy Court on January 30, 2004.

Following the Bankruptcy Court's dismissal of his claims against Mr. Gherlone, Mr. Mullarkey filed four motions requesting (1) a discretionary change of venue to the district court; (2) joinder of his former attorney, Steven Kartzman, as a defendant; (3) "a reference to a prosecuting authority" so that criminal charges could be brought against Appellees; and (4) reconsideration of the Order dismissing his claims against Mr. Gherlone. The Bankruptcy Court denied each of those motions in a series of summary Orders issued on January 12, 2005. The Orders did not include any findings of fact or law, but simply stated that the Bankruptcy Court had reviewed Mr. Mullarkey's motions and they would be denied "for good cause shown."

## B. District Court Proceedings

Mr. Mullarkey sought to appeal that ruling, but incorrectly filed his Notice of Appeal in the Bankruptcy Court. The case was eventually transferred to this Court, where it was assigned to the Honorable Faith S. Hochberg, District Judge. In an apparent miscommunication between the Bankruptcy Court and this tribunal, however, only two of the four Orders denying Mr. Mullarkey's motions were recorded on the docket for the appeal.

The confusion surrounding Mr. Mullarkey's appeal only worsened from there. On August 2, 2005, Judge Hochberg affirmed the Bankruptcy Court's Order denying Mr. Mullarkey's four motions. Judge Hochberg's Order, however, referred to a different ruling by the Bankruptcy Court – the April 11, 2005 dismissal of Mr. Mullarkey's Amended Complaint pursuant to Federal Rule of Bankruptcy Procedure 7056. That ruling was issued after the Appellees had moved to dismiss Mr. Mullarkey's Amended Complaint for failure to state a claim pursuant to Federal Rule of Bankruptcy Procedure 7012(b). The Motion to Dismiss was filed during the period in which Mr. Mullarkey's appeal of the Bankruptcy Court's denial of his four motions languished in a sort of procedural netherworld between the dockets of the two tribunals

before being transferred to this Court.  After noting that its consideration of Mr. Mullarkey's "numerous submissions" outside the pleadings required that the Motion to Dismiss be treated as a request for summary judgment, the Bankruptcy Court ruled that (1) the Complaint's allegations of fraud were raised and rejected in prior proceedings and therefore were barred by the doctrines of res judicata and collateral estoppel (or alternatively, New Jersey's "entire controversy" doctrine), and (2) Mr. Mullarkey did not have standing to bring criminal charges and so, to the extent his Complaint could be read to include such charges, those claims must be dismissed. Judge Hochberg apparently (and understandably, given the large number of judgments and appeals generated by Mr. Mullarkey's litigious behavior) confused that ruling with the earlier decision denying the four motions.

Mr. Mullarkey apparently made the same mistake.  On August 15, 2005, he filed a Motion for Reconsideration of Judge Hochberg's Order.  Rather than noting that Judge Hochberg had mixed up the various rulings below and pointing out that it was the Bankruptcy Court's January 12, 2005 Order denying his four motions that was at issue in that appeal, Mr. Mullarkey addressed his arguments to the April 11, 2005 ruling dismissing his claims.  On August 23, 2005, Judge Hochberg denied the Motion for Reconsideration on the grounds that it was both untimely and without substantive merit.  Mr. Mullarkey timely appealed that ruling.

While the proceedings relating to the Bankruptcy Court's January 12, 2005 denial of his four motions were pending before Judge Hochberg, Mr. Mullarkey filed another appeal to this Court – this one dealing with the Bankruptcy Court's April 11, 2005 dismissal of his claims. This Court affirmed the Bankruptcy Court's judgment on August 26, 2005, and denied Mr. Mullarkey's subsequent Motion for Reconsideration of that ruling on October 4, 2005.

Consistent with his earlier practice relating to adverse rulings, Mr. Mullarkey timely appealed the denial of his Motion for Reconsideration.

## C. Court of Appeals Proceedings

The Court of Appeals appears to have addressed Mr. Mullarkey's two petitions together. Mr. Mullarkey did not contend that the Bankruptcy Court erred in denying his four motions. Rather, he focused exclusively on the Bankruptcy Court's April 11, 2005 dismissal of his adversary claims. In doing so, Mr. Mullarkey contended that (1) the Bankruptcy Court did not have jurisdiction over his claim, (2) even if such jurisdiction did exist, this Court erred in treating the matter as a "core" bankruptcy proceeding as defined by 28 U.S.C. § 157(b)(2), which allowed the Bankruptcy Court to enter a final judgment and resulted in a deferential standard of review on appeal, and (3) both the Bankruptcy Court and this Court erred in finding that his claims were barred by collateral estoppel or <u>res judicata</u>.

In an Order and Opinion dated July 31, 2008, the Court of Appeals rejected Mr. Mullarkey's first and second arguments. It first held that the Bankruptcy Court's failure to explicitly determine whether Mr. Mullarkey's claims fell under its core jurisdiction as defined by 28 U.S.C. § 157(b)(3) did not deprive that tribunal of jurisdiction altogether. <u>Mullarkey</u>, 536 F.3d at 222. The Court of Appeals then determined that Mr. Mullarkey's allegations that Appellees committed fraud on the Bankruptcy Court while pursuing their request that the automatic stay of foreclosure proceedings be lifted "implicated the integrity of the entire bankruptcy process and w[ere] inseparable from the bankruptcy context." <u>Id.</u> at 223 (internal quotations and citations omitted). Based on that finding, the Court of Appeals ruled that Mr.

Mullarkey's claims fell within the core jurisdiction of the Bankruptcy Court, and that tribunal therefore had the power to enter final orders relating to those claims.[2] Id. at 224.

The Court of Appeals agreed with Mr. Mullarkey's third contention, however, and ruled that his claims were not barred by collateral estoppel or res judicata. The Bankruptcy Court's decision to that effect was based on its finding that "[a]ll of Mullarkey's arguments have been repeatedly rejected by this Court, by the district court on appeal and on subsequent motions for reconsideration, as well as by the state court." Id. at 224. The Court of Appeals held, however, that those repeated rejections were insufficient to give rise to collateral estoppel or res judicata for two reasons. First, the Bankruptcy Court's rejections of Mr. Mullarkey's arguments occurred in the context of a motion to lift the automatic stay of foreclosure, which "is meant to be a summary proceeding," and does not involve an adjudication on the merits. Id. at 226 ("A hearing on a motion for relief from stay is a summary proceeding of limited effect," and does "not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate." (internal quotations omitted)). Moreover, the Court of Appeals found it impossible to determine from the Bankruptcy Court's prior judgments – which were "brief and d[id] not suggest the basis upon which the court granted relief from the stay" – whether Mr. Mullarkey's allegations of fraud had been asserted and rejected on their merits. Id. at 227. Therefore, the Court of Appeals reversed and remanded, stating:

> Because the record before us counsels a conclusion that the Bankruptcy [Court] erred on the merits with respect to its holding that Mullarkey's claims are barred by various preclusion doctrines, we will reverse and remand to the District Court to consider the merits of Mullarkey's claims, as well as his appeal of the Bankruptcy Court's denial of his four motions.

---

[2] Mr. Mullarkey did not present arguments in support of his RICO claims. Therefore, the Court of Appeals ruled that those claims were waived. Id. at 224 n.7. Thus, only Mr. Mullarkey's fraud claims remain at issue.

Id. at 231.

**D. Proceedings on Remand**

The havoc caused by the summary nature of the Bankruptcy Court's January 12 and April 11, 2005 Orders denying Mr. Mullarkey's four motions and dismissing his claims continued after the case was remanded.  Judge Hochberg, apparently finding it impossible to determine the bases for those rulings, issued an Order on September 11, 2008 remanding Mr. Mullarkey's appeal of the Bankruptcy Court's January 12, 2005 denial of his four motions "for a clear statement of the factual and legal findings that support the Bankruptcy Court's determination of the four motions, including appropriate references to the transcript of the Bankruptcy Court's January 11, 2005 and other supporting legal authority."  The same day, Judge Hochberg issued a separate Order remanding Mr. Mullarkey's appeal of the Bankruptcy Court's April 11, 2005 dismissal of his claims "for proceedings consistent with the decision issued by the Third Circuit, including consideration of the merits…"

It does not appear that the Bankruptcy Court complied with Judge Hochberg's Order requesting findings of fact and law supporting its January 12, 2005 denial of Mr. Mullarkey's four motions.  Appellees erroneously state in their brief that the action was remanded directly from the Court of Appeals to the Bankruptcy Court, and there is no indication that the appeal before Judge Hochberg proceeded beyond her September 11, 2008 Order.  Rather, it seems that after Judge Hochberg's Order requiring that the Bankruptcy Court articulate its bases for denying the four motions, the action languished below and Mr. Mullarkey's appeal of the denial of his four motions was never decided.

In contrast, it appears from the docket of the proceeding below that the Bankruptcy Court made reasonable attempts to resolve the merits of Mr. Mullarkey's claims, but was precluded

from doing so by his refusal to serve a list of witnesses to be called at trial and participate in the discovery process.  In a letter dated November 3, 2008, Mr. Mullarkey requested that the Bankrupcty Court convene a status conference of all parties.  The Bankruptcy Court agreed to do so, and held a status conference on December 10th of that year at which all parties to this appeal were present.  Following that conference, the Bankruptcy Court on December 16, 2009 issued a Scheduling Order stating that Mr. Mullarkey was required by January 5, 2009 to submit (1) a list of potential witnesses for trial, (2) a copy of the Complaint on which he intended to proceed – presumably in an effort to clarify his claims – and (3) a statement identifying the attorney, if any, who would represent him during the upcoming proceedings.  The Scheduling Order went on to state that all fact discovery should be completed by March 15, 2009 and that another status conference would be held on March 26th of that year.

Mr. Mullarkey did not submit any of the documents called for in the Bankruptcy Court's Scheduling Order by the January 5, 2009 deadline.  In fact, Mr. Mullarkey never filed those documents, despite the fact that counsel for Appellees sent him a letter on January 7, 2009 informing him that he was required to do so and stating that the case could not move forward until he complied.

Instead of the documents required by the Bankruptcy Court's Scheduling Order, Mr. Mullarkey on January 8, 2009 filed a one-page letter in which he stated:

> I was cheated by fraud during my bankruptcy process.  Both David Gherlone attorney for Leonard Tamboer and John McKenna attorney for Leslie Tamboer withheld evidence from the Bankruptcy Court as to the criminal intent of the Tamboers regarding an asset of my bankruptcy estate, as did my attorney Steven Kartzman.  It was a concerted action by these five individuals to steal the Princeton Estates partnership property out of the bankruptcy estate.  The fraudulent taken property has to be returned to the bankruptcy estate for the distribution of claims.  It is the law.[3]

---

[3] As acknowledged by the Court of Appeals, Mr. Mullarkey's filings are "not a model of clarity." Id. at 223.  In order to fully set forth the substance of Mr. Mullarkey's various filings, the Court

The letter excerpted above was sent directly to the Bankruptcy Court, and it does not appear that Mr. Mullarkey made any effort to serve Appellees or their attorneys with a copy of that correspondence.

After being forwarded a copy of Mr. Mullarkey's submission by the Bankruptcy Court, Appellees responded by sending him another letter, this one dated January 15, 2009, requesting that he file the documents required by the Bankruptcy Court's Scheduling Order.  Additionally, the Appellees requested that Mr. Mullarkey advise them as to whether he wished the letter he filed on January 8, 2009 to be construed as his Complaint, and reminded him of the requirement that he serve all documents filed with the Bankruptcy Court on counsel for the Appellees.

On February 19, 2009, after Mr. Mullarkey failed to respond to either of their previous letters or file the documents that should have been submitted by January 5th, Appellees submitted a letter to the Bankruptcy Court informing it of Mr. Mullarkey's delinquency.  The Appellees' letter noted that Mr. Mullarkey's correspondence included allegations of wrongdoing on the part of David Gherlone and Steven Kartzman, despite the fact that the Bankruptcy Court had previously dismissed the claims against the former and had denied a motion to join the latter as a defendant.  Finally, Appellees requested that the Bankruptcy Court allow more time for the completion of discovery, which was scheduled to conclude on March 15, 2009, stating:

> Our office has been unable to timely move forward with discovery in this matter as a result of Mr. Mullarkey failing to provide the aforesaid required documents. Therefore, since our office has not received additional information from Mr. Mullarkey, and the discovery end date is approaching, we will assume he does not have any witnesses in this matter and that he will not be represented by counsel. However, we need clarification from Mr. Mullarkey about what his allegations are in this matter and we will forward this letter to him for his prompt response.

---

will quote directly from those submissions throughout this ruling.  Unless otherwise noted, all quotations are verbatim, and include the entire substance of the filing in question.

As a result of the above unresolved issues, we respectfully request an extension of the discovery end date for our office, as well as any guidance the Court can provide about Mr. Mullarkey's complaint and what limits there may be.

Mr. Mullarkey did not respond to the Appellees' February 19, 2009 letter. Instead, on March 8th of that year, he submitted a one-page letter captioned as a "Motion for Pro Bono Attorney." In that letter, Mr. Mullarkey stated:

Mr. McKenna told me the property and the money the Tamboers got for the Princeton Estates are gone. <u>What do you want?</u> I want help to find my money and property. I want a pro bono lawyer to plead my case.

Have the Defendants no shame? They are making a mockery out of the justice system.

Before his request for pro bono counsel could be addressed by the Bankruptcy Court, Mr. Mullarkey on March 20, 2009 submitted two letters. The first was captioned as a "Motion for Trial on Allegations of Fraud With Regard to an Asset of the Bankruptcy Estate." In it, Mr. Mullarkey restated without any introduction or explanation a portion of the July 31, 2008 ruling issued by the Court of Appeals in which that tribunal attempted to distill his allegations. The ten assertions set forth by the Court of Appeals and repeated in Mr. Mullarkey's letter were:

1. That the Defendants knowingly and fraudulently concealed from the trustee $375,000 belonging to his estate.

2. That the Defendants knowingly and fraudulently made a false certification to the Bankruptcy Court under penalty of perjury.

3. That the Defendants presented a false claim of $182,000 to the Bankruptcy Court.

4. That the Defendants attempted to obtain property title in a fraudulent manner.

5. That the Defendants committed the crime of solicitation to a conspiracy.

6. That these acts occurred over the course of several years and caused economic injury.

7.       That the Defendants were involved in a conspiracy.

8.       That the Defendants fraudulently foreclosed on the property with a bogus lien.

9.       That the Defendants concealed the sale of the property from the Bankruptcy Court/Trustee through false statements.

10.     That the Defendants have violated the RICO statute.[4]

Mullarkey, 536 F.3d at 223.

In the second of the two letters he submitted to the Bankruptcy Court on March 20, 2009 – which was captioned "Motion to Consider the Merits of Plaintiff's Appeal of the Bankruptcy Court's Denial of Plaintiff's Four Motions" – Mr. Mullarkey restated without explanation the recitation set forth by the Court of Appeals in its prior ruling of the four motions denied by the Bankruptcy Court on January 12, 2005.  See Id. at 220.

On March 25, 2009, the Bankruptcy Court sent a letter to all parties indicating that Mr. Mullarkey had appeared that day in an unrelated matter and requested an adjournment of the status conference that had previously been scheduled for the following day due to a temporary health issue.  In its letter, the Court indicated that the status conference would be rescheduled for April 21, 2009, and the issues raised by Appellees' February 19, 2009 letter – in which they stated that Mr. Mullarkey had failed despite numerous requests to comply with the Bankruptcy Court's previous Scheduling Order – would be addressed at that time.

Following the status conference, the Bankruptcy Court on April 22, 2009 entered a second Scheduling Order extending the deadline for Mr. Mullarkey's required submissions – a

---

[4] As discussed above, Mr. Mullarkey's claims were dismissed in their entirety by the Bankruptcy Court on April 11, 2005.  In his appeal from that dismissal, Mr. Mullarkey presented no evidence in support of his RICO claim.  Therefore, the Court of Appeals ruled that any RICO claims had been waived.  Id. at 224 n.7.  Even if Mr. Mullarkey's RICO claims had not been waived, the Court of Appeals found that his allegations that the Appellees had violated that statute would not have been sufficient to state a cognizable civil claim for violations of that statute.  Id.  Thus, Mr. Mullarkey is barred from raising RICO claims in this appeal or future proceedings.

(1) a list of potential witnesses for trial, (2) a copy of the Complaint on which he intended to proceed, and (3) a statement identifying the attorney, if any, who would represent him during the upcoming proceedings – from January 5 to May 29, 2009.  The new Scheduling Order also stated that the deadline for completion of discovery would be extended from March 15, 2009 to July 15th of that year.

After it issued the April 22, 2009 Scheduling Order, it appears that the Bankruptcy Court made diligent efforts to obtain pro bono representation for Mr. Mullarkey, including sending inquiries to the law firm that had represented him during his previous appeal.  On July 2, 2009, that firm informed the Bankruptcy Court that it would be unable to represent Mr. Mullarkey in the proceedings below.

Mr. Mullarkey did not comply with the Bankruptcy Court's April 22, 2009 Scheduling Order by submitting the required documents before May 29th of that year.  On June 25, 2009, Appellees sent Mr. Mullarkey another letter informing him that he had failed to abide by the Bankruptcy Court's Scheduling Orders and stating that they would be unable to move forward with his deposition, which was scheduled for June 30th, due to that failure.  Appellees' letter also informed Mr. Mullarkey that they would file a motion to dismiss his claims if he persisted in refusing to file the documents requested by the Bankruptcy Court.

Despite receiving repeated warnings from both the Bankruptcy Court and Appellees, Mr. Mullarkey did not file the required documents.  On July 10, 2009, Appellees filed a motion in which they argued that Mr. Mullarkey's claims should be dismissed pursuant to Bankruptcy Rule 7041 and Federal Rule of Civil Procedure 41(b) for failure to prosecute.

Mr. Mullarkey never submitted a response to Appellees' arguments in favor of dismissal. On July 21, 2009, he filed a letter to the Bankruptcy Court requesting "a continuance of anymore

15

[sic] hearings, judgments, or orders until: (1) the return of all the assets of Princeton Estates to the Bankruptcy Estate, [and] (2) the FBI investigation of this matter is completed."[5]  Attached to that letter – as usual, without any context or explanation of its relevance – was a correspondence sent by Mr. Mullarkey to the Trustee of the bankruptcy estate on July 14, 2009, in which he stated:

> Logically from Mr. McKenna's words, "The Princeton Estates' property is gone." The Tamboers have no intention of returning Princeton Estates to the "bankruptcy estate."  Since you are the representative of the bankruptcy estate, one of the many duties you have is to collect the assets of the "bankruptcy estate" and reduce [them] to cash.  One cannot pick and choose which matters, one will act for people, and which you will not, those with lawyers and those without lawyers. The claims of the Tamboers on the "bankruptcy estate" should be examined for fraud.  If it is not, that would make a mockery of the entire concept of justice, which must be for all, or it is for no one.  Please sue the Tamboers for the return of the Princeton Estates' assets to the "bankruptcy estate."
>
> The Tamboers forfeited any claim to the assets of Princeton Estates by committing the crimes of solicitation of conspiracy and perjury.  Details attached.[6]

It is unclear whether Mr. Mullarkey served Appellees with a copy of his July 14, 2009 letter.

The Bankruptcy Court – faced with Mr. Mullarkey's refusal to participate in discovery or clarify the nature of his claims – adjourned the trial scheduled for July 23, 2009 so that it could consider the Appellees' Motion to Dismiss.  Despite the fact that he had requested a continuance of all proceedings in his July 14, 2009 letter, Mr. Mullarkey apparently took issue with that adjournment.  On August 7, 2009, he submitted a letter to the Bankruptcy Court stating:

> I am baffled that you are turning me away from a trial, once again.  The United States Court of Appeals for the Third Circuit concluded, "That the bankruptcy

---

[5] There is no evidence that the events out of which the proceedings below arose were ever the subject of an inquiry by the Federal Bureau of Investigation ("FBI").  Mr. Mullarkey submitted no documentation of such an investigation, and there is no reference to a law enforcement action by the FBI or any other agency in the other portions of the record.

[6] Any documents appended to Mr. Mullarkey's July 14, 2009 letter to the Trustee were not included in his submission of that letter to the Bankruptcy Court.  Thus, there were no "details attached."

erred on the merits with respect to its holding that Mullarkeys' claims are barred by various preclusion doctrines, we will reverse and remand to the district court to consider the merits of Mullarkeys' claims, as well as his appeal of the bankruptcy courts' denial of his four motions."[7]

Mr. McKenna wants you to dismiss this case again.   He has Len Tamboer blaming him for:

1.  Not selling to Kelly-Hynes
2.  Foreclosing on the Mullarkeys
3.  Getting him involved in an extortion plan.

Please note the evidence of numbers one, two, and three is documented in transcript and on the tape of Mullarkey-Len Tamboer meeting.

More about, No. 3, the extortion plan: Our attorney, Mr. Kartzman, came to Patricia and myself with a deal outside [the Bankruptcy Court's] courtroom offered by Mr. McKenna.   Patricia and myself would sign away all interest in Princeton Estates in exchange for the Tamborer's agreeing not to come after 109 Halsey Road.   This first offer was followed up by a second repeat offer in our Attorney Kartzman's office, shortly thereafter.   Mr. Kartzman emphasized how the Tamboerers would come after our home, 109 Halsey Road, if they didn't get enough money at the Sheriff's sale.   I refused the offer.   Patricial depending on Mr. Kartzman's advice, capitulated.   Patricia was scared half-to-death about losing 109; she then signed away her 25% partner interest in Princeton Estates. Our Attorney Kartzman drew up the paperwork and the deal was done.   Len Tamboer told me about Mr. McKenna calling him and asking, "How do you feel about the deed in lieu."   Len asked me, "What does that mean?"   "It means you get everything, and we get nothing in exchange for you not going after 109."

Mr. Mullarkey's August 7, 2009 letter did not include any of the documents required by

the Bankruptcy Court's December 16 and April 22, 2009 Scheduling Orders: (1) a list of

potential witnesses, (2) a copy of the Complaint on which he wished to proceed, and (3) a

statement identifying his attorney or indicating that he would represent himself.   In fact, Mr.

Mullarky submitted no correspondence to the Bankruptcy Court other than his March 20, 2009

Motions (which restated without any context portions of the prior ruling by the Court of

---

[7] Mr. Mullarkey's quotation of the ruling by the Court of Appeals contained several relatively harmless errors that did not significantly alter the meaning of the portion of the decision to which he referred.   See Id. at 231.   As discussed supra at note 3, the Court has refrained from correcting such errors in order to represent Mr. Mullarkey's filings as accurately as possible.

Appeals) and the three letters he sent on January 8, March 8, and August 7, 2009 (which contained conclusory allegations of wrongdoing on the part of Appellees but did not include the information requested by the Bankruptcy Court in its Scheduling Orders).[8]  In light of Mr. Mullarkey's failure to comply with its Scheduling Orders, the Bankruptcy Court on August 11, 2009 granted Appellees' Motion to Dismiss pursuant to Bankruptcy Rule 7041 and Federal Rule of Civil Procedure 41(b), and entered an Order stating:

> This matter having been brought before the Court on Motion … for an Order dismissing Plaintiff's Complaint pursuant to [Federal Rule of Civil Procedure] 41(b), and the Court having considered the matter and good cause appearing,
>
> It is on this 11th day of August, 2009,
>
> ORDERED that the Complaint of the Plaintiff … is hereby dismissed with prejudice.

**E.  The Pending Appeal**

Mr. Mullarkey filed a Notice of Appeal from the Bankruptcy Court's decision on August 17, 2009.  Like his earlier appeal, Mr. Mullarkey wrongfully submitted that document to the Bankrupcty Court.  On September 1, 2009, the Bankruptcy Court forwarded Mr. Mullarkey's Notice of Appeal to this Court, along with a certification of failure to file a designation of documents to be included in the record and issues presented as required by Federal Bankruptcy Rule of Procedure 8006.  Unaware of the convoluted history of the action, this Court dismissed Mr. Mullarkey's appeal in an Order dated September 10, 2009 for failure to comply with Bankruptcy Rule 8006.  The following day, before the Court's order was entered on the case docket, Appellees submitted a motion requesting that relief.  Due to the fact that it was filed after

---

[8] Mr. Mullarkey sent a third letter directly to the Trustee on July 14, 2009, which he attached to the request for a continuance he submitted to the Bankruptcy Court on July 21st of that year.  As with the letters sent directly to the Bankruptcy Court, that letter did not include the information required by the December 16 and April 22, 2009 Scheduling Orders.

the Court had issued its Order and was therefore moot, Appellees' Motion to Dismiss was added

to the appeal docket but was not considered at the time it was filed.

On September 22, 2009, Mr. Mullarkey submitted a one-page letter to which he attached

the July 31, 2008 ruling of the Court of Appeals.  In his letter, he stated that:

> It is bad faith on the part of the defendants and their lawyers to try to deny me a
> trial on the merits of my claims as well as my appeal of the Bankruptcy Court's
> denial of my four motions.  My constitutional right to a trial should not be
> forfeited because of procedural errors.  My equal protection under the constitution
> should not be forfeited due to my not having a lawyer.

> The United States Court of Appeals for the Third Circuit heard the arguments of
> my [former] lawyer, Christian T. Vergonios, and Kathleen Riordan lawyer for the
> defendants on February 13, 2008 and decided in my favor July 31, 2008.  The
> United States Court of Appeals for the Third Circuit asked the District Court to
> consider the merits of my claims, as well as my appeal of the Bankruptcy Court's
> denial of my four motions.  I believe anything short of a trial is a miscarriage of
> justice.

The Court informed the parties that it would construe Mr. Mullarkey's letter as a Motion

for Reconsideration of its September 10, 2009 Order dismissing the appeal.  Appellees filed

timely opposition to that Motion.  Rather than submit a reply brief, Mr. Mullarkey on October

16, 2009 filed a letter in which he stated:

> The August 11, 09 hearing in [the Bankruptcy Court] could best be described as a
> "kangaroo court."  It was irregular and unfair.  That hearing stole my right to trial,
> my right to bring witnesses to testify on my behalf, my right to face the
> Defendants, and my right to see and examine Defendants' claim to my property.

> [The Bankruptcy Court] in [its] courtroom Wednesday, October 14, 09 refused to
> recuse [itself] from this case.  "I have no personal prejudice against Richard
> Mullarkey."  Does that sound right to you?  Esp. considering the August 11, 09
> nightmare.  [The Bankruptcy Court] wrongly deprived me of my substantive
> property rights by denying me a trial on the merits of my claims.

Attached to Mr. Mullarkey's October 16, 2009 submission was a letter he sent directly to the

Bankruptcy Court on September 2, 2009 in connection with the recusal proceedings referenced

above.  In that letter, Mr. Mullarkey stated:

Regarding the August 11, 2009 hearing, I knew I was in trouble when you told me you didn't remember July 1, 2009 orders and there was no record of same. I struggled very hard to remember the dates, words, and events of those orders for you. My inability to do so was met with much joviality and scorn. It was cruel and demeaning. Both you and [Appellees' counsel] knew the information you sought was readily available in the court's records. But that was too easy, apparently you and [Appellees' counsel] preferred to see me squirm. The banter between you, [Appellees' counsel], and the clerk, "Show me." "I don't have it." "Do you have it[?]" "Do you know what he is talking about[?]" "Maybe this is it." "Is this it?" This exchange went on and on. Great fun for everyone but me. It was horrible and frightening and I was shaking. Because of your strong personal dislike and prejudice of me, I am a mental wreck. It seems you are determined no matter the facts that I will never get a trial, fair shake, or justice. Please recuse yourself from this case.

Mr. Mullarkey did not include a designation of items to be included in the record on appeal or list of issues presented, as required by Bankruptcy Rule 8006, in either his submissions to this Court, and has made no attempt to file such materials during the pendency of this action.

## II.  DISCUSSION

As a preliminary matter, the pending appeal – which arises out of the Bankruptcy Court's August 11, 2009 dismissal of Mr. Mullarkey's claims – must be distinguished from Mr. Mullarkey's earlier appeal of the Bankruptcy Court's January 12, 2005 denial of his four motions. Mr. Mullarkey complied with Bankruptcy Rule 8006 in the earlier appeal. After the case was remanded from the Court of Appeals to this Court, Judge Hochberg instructed the Bankruptcy Court to issue findings of fact and law in support of its ruling denying the four motions. The Bankruptcy Court never did so. Thus, it appears that Mr. Mullarkey's appeal from the denial of his four motions was never fully resolved. In order to remedy that situation, the Court will address the merits of that appeal in this ruling.

For the reasons set forth below, both of Mr. Mullarkey's appeals will be dismissed. The appeal from the Bankruptcy Court's August 11, 2009 dismissal of his claims must be dismissed due to Mr. Mullarkey's failure to comply with the requirements of Bankruptcy Rule 8006. Even

if he had complied with that rule, Mr. Mullarkey's Complaint against Appellees – even when taken together with the averments made in his various submissions to this Court and the Bankruptcy Court – fails to state a cognizable claim for fraud or any other civil cause of action. Despite being given multiple opportunities to do so, Mr. Mullarkey has obstinately refused to cure the defects in his Complaint, choosing instead to engage in conclusory assertions of wrongdoing on the part of Appellees and unfairly charge the Bankruptcy Judge presiding over the proceedings below with bias.  Therefore, the Court would be compelled to dismiss with prejudice Mr. Mullarkey's claims against Appellees even if he had complied with Bankruptcy Rule 8006.

Similarly, Mr. Mullarkey's appeal of the Bankrupcty Court's denial of his four motions will be dismissed.  Two of those motions – Mr. Mullarkey's request for (1) a discretionary change of venue to this Court, and (2) "a reference to a prosecuting authority" so that criminal charges could be brought against the Appellees – need not be discussed at length.  With regard to the first, there is no indication that the Bankruptcy Court abused its discretion in denying Mr. Mullarkey's motion for a change of venue.  In fact, the Court of Appeals explicitly held in its earlier decision that Mr. Mullarkey's claims fall within the "core" jurisdiction of the Bankruptcy Court and were appropriately addressed by that tribunal.  Id. at 224 ("[T]he Bankruptcy Court had subject matter jurisdiction over the Complaint filed by Mullarkey.  Because the matters were core, the Court properly exercised final adjudicative authority over the matter.").  Therefore, the Bankruptcy Court's denial of Mr. Mullarkey's motion for a change of venue to this Court will be affirmed.

The Bankruptcy Court's denial of Mr. Mullarkey's motion for "a reference to a prosecuting authority" must also be affirmed.  That motion – in requesting that the Bankruptcy

Court require authorities to prosecute the Appellees for crimes Mr. Mullarkey alleges they committed in connection with the foreclosure on Princeton Estates – asked for relief that the Bankruptcy Court was powerless to grant.  It is well-established that "[t]he decision of whether to prosecute for a criminal offense is a function of the executive authority, not the trial court." Multimedia Holdings Corp. v. Cir. Ct. of Fla., St. John's County, 544 U.S. 1301, 1305 (2005). Thus, neither the Bankruptcy Court nor this tribunal may order law enforcement authorities to bring charges against any individual.  Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986) ("The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."). Mr. Mullarkey was free to follow the normal method of reporting an alleged crime to police, after which law enforcement agents could have, in their sole discretion, chosen to institute a prosecution.  He may not, however, institute a criminal prosecution by motion in his civil suit.

Finally, the Bankruptcy Court's denial of Mr. Mullarkey's other two motions – (1) that his former attorney, Steven Kartzman, be joined as a defendant in the adversary proceeding below, and (2) that the Bankruptcy Court reconsider its Order dismissing the claims asserted against Mr. Gherlone – must be affirmed due to the fact that Mr. Mullarkey has not stated a cognizable claim against either individual.  As with his allegations against Appellees, Mr. Mullarkey has been given multiple opportunities to clarify his claims, but has submitted only conclusory assertions of wrongdoing, none of which are sufficient to meet the pleading standards for a civil cause of action.  Therefore, the Court will affirm the Bankruptcy Court's denial of Mr. Mullarkey's four motions, and his appeals will be dismissed in their entirety.

**A. Appeal from the Bankruptcy Court's August 11, 2009 Order**

Pursuant to Federal Rule of Bankruptcy Procedure 8006, "[w]ithin 10 days after filing [a] notice of appeal … [an] appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Failure to do so may result in dismissal.  Fed. R. Bank. Proc. 8001(a) ("An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal.").  In deciding whether dismissal is warranted, a district court must balance several factors, including:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to [comply with the rule]; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

In this case, each of the aforementioned factors weighs in favor of dismissal.  Mr. Mullarkey is proceeding pro se, and thus bears personal responsibility for his failure to comply with Bankruptcy Rule 8006.  See Emerson v. Theil College, 292 F.3d 184, 190 (3d Cir. 2002) ("[B]ecause [Plaintiff] is proceeding pro se, his failure to comply with [the Court's] orders could not be blamed on counsel.").  Moreover, his failure to file a designation of items to be included in the record or, more importantly, a list of issues presented by the appeal has prejudiced Appellees by making it impossible to effectively oppose his appeal.  As discussed above, Mr. Mullarkey's only submissions in connection with the pending appeal were the letters he sent to this Court on September 22 and October 16, 2009.  Neither contained a statement of legal arguments in support of his appeal.  Rather, Mr. Mullarkey's submissions contained unsupported

allegations of bad faith on the part of Appellees and bias on the part of the Bankruptcy Court.  It would be inherently prejudicial to the Appellees if the Court were to credit such assertions without requiring evidentiary support, and deciding Mr. Mullarkey's appeal on the basis of such conclusory statements would effectively rob Appellees of the opportunity to formulate arguments in opposition.

The third factor – whether the party whose claims are dismissed has "a history of dilatoriness" – also weighs heavily in favor of dismissing Mr. Mullarkey's claims.  During the proceeding below, Mr. Mullarkey ignored repeated Orders of the Bankruptcy Court despite the fact that Appellees sent him multiple letters informing him of his obligations under those Orders. In fact, Mr. Mullarkey was given approximately eight months – from the time of the Bankruptcy Court's December 16, 2009 Scheduling Order to the dismissal of his claims for failure to prosecute on August 11, 2009 – to file (1) a list of potential witnesses for trial, (2) a copy of the Complaint on which he intended to proceed, and (3) a statement identifying the attorney, if any, who would represent him at trial.  During that time, Appellees informed him by letter of four separate occasions of his obligation to produce the requested documents.  When Mr. Mullarkey missed the initial deadline for the submission of the aforementioned documents of January 5, 2009, the Bankruptcy Court entered a second Scheduling Order allowing him to file those documents prior to May 29th of that year.  Still, Mr. Mullarkey did not comply.  In fact, he refused to submit any responsive documents even after Appellees filed a Motion to Dismiss on July 10, 2009.  In short, Mr. Mullarkey was informed of his obligations on no fewer than seven occasions.  To say that his refusal to comply represents "a history of dilatoriness" would be an understatement.

There is no question that Mr. Mullarkey's failure to comply with the Bankruptcy Court's Scheduling Orders was "willful," and that the fourth of the <u>Poulis</u> factors therefore weighs in favor of dismissal.  As discussed above, Mr. Mullarkey was given every opportunity to submit the requested documents.  Instead, he chose to engage in unsupported assertions of bad faith on the part of his adversaries and repeatedly submitted letters accusing the Bankruptcy Court of making "a mockery out of the justice system."  The fact that Mr. Mullarkey is proceeding <u>pro se</u> does not excuse such repeated and egregious misbehavior, especially given Mr. Mullarkey's long history of litigation before both the Bankruptcy Court, during which he should have become familiar with the procedural rules of that tribunal and the necessity of complying with court Orders.

Nor does it appear that any sanction other than dismissal would sufficiently address Mr. Mullarkey's behavior.  Given his status as a debtor in the action below, any financial sanction would serve only to unfairly dilute the recovery of Mr. Mullarkey's creditors.  Furthermore, Mr. Mullarkey's failure to file the documents required by the Bankruptcy Court's December 16 and April 22, 2009 Scheduling Orders meant his claims could not be resolved.  His refusal to clarify his Compliant made it impossible to determine what claims he was pursuing, and against which individuals those claims were asserted.  As discussed below, Mr. Mullarkey's claims are, at least potentially, based on allegations of fraud.  Without a Complaint setting forth the statements that allegedly constituted such fraud and which of the individuals being sued made those statements, it would have been impossible for the Appellees to mount an effective defense.  Additionally, Mr. Mullarkey's refusal to file a list of witnesses to be called at trial would have complicated the resolution of his claims by subjecting the Appellees to unfair surprise by making it impossible for them to prepare for cross-examination.  Thus, Mr. Mullarkey's failure to comply with the

Bankruptcy Court's Scheduling Orders went to the very issue of whether his claims could be effectively redressed through the judicial process, and no remedy short of dismissal could have corrected that failure.

Finally, it does not appear that Mr. Mullarkey's claims against Appellees were meritorious.  As discussed below, Mr. Mullarkey's allegations were insufficient to state a cognizable claim for fraud or any other civil cause of action.  Despite submitting numerous letters to both this Court and the Bankruptcy Court, Mr. Mullarkey failed to produce any evidence that the Appellees actually committed the various violations (which he characterized at different points in the litigation as fraud, solicitation of conspiracy, and an ongoing criminal enterprise in violation of the RICO statute) of which he complained.  Instead, his letters included only conclusory allegations that the Appellees had violated his (undefined) rights.  Such allegations, without more, cannot serve as the basis for civil liability.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("[A] mere scintilla of evidence [is] insufficient [to survive a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff.").

## B.  Merits of Mr. Mullarkey's Claims

Even if Mr. Mullarkey had complied with Bankruptcy Rule 8006, the Court would be compelled to dismiss his claims as utterly without merit.  A closer examination of Mr. Mullarkey's allegations – as articulated in his Amended Complaint and the numerous letters he filed in connection with the proceeding below and this appeal – reveals that he has failed to state a claim upon which relief could be granted against any individual.

### i.       Standard of Review

Federal Rule of Civil Procedure 12(b)(6), which is applicable to Bankruptcy Proceedings pursuant to Bankruptcy Rule 7012(b), permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

It is not necessary, however, for a complaint to allege specific facts that conclusively establish a right to relief. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atl., 127 S.Ct. at 1964.  A complaint is adequately pled as long as it includes facts sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. (internal citations omitted).  Complaints by pro se plaintiffs are especially "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

A possibly meritorious claim should not be precluded because of a defect in the pleadings, and leave to amend should be granted in cases where a Complaint is dismissed for failure to state a claim unless doing so would be futile. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434-35 (3d Cir. 1997).  However, a court need not grant leave to amend in cases where the plaintiff has failed to state a claim after repeated attempts, caused undue delay, or would be unable to make out a cognizable claim even if the facts were pled with greater particularity. Id. at 1435.

ii.     *Mr. Mullarkey's Allegations*

Even under the liberal standards applicable to <u>pro se</u> complaints, Mr. Mullarkey's allegations are insufficient to state a cognizable claim against any individual.  In his one-page Amended Complaint filed April 8, 2004, Mr. Mullarkey named as Defendants the Appellees, Mr. McKenna, and Mr. Gherlone.  As an attachment and apparent supplement to that document, Mr. Mullarkey included a series of "facts" asserted in response to an Order from Judge Hochberg instructing him to submit a clear and concise statement of the basis for federal subject matter jurisdiction over his adversary proceeding.  Those "facts," which form the essence of Mr. Mullarkey's allegations, were as follows:

1.  Defendants Leslie Tamboer and Leonard Tamboer knowingly and fraudulently concealed from Trustee $375,000 belonging to the estate of Debtor Plaintiff Richard Mullarkey.

2.  Leonard Tamboer knowingly and fraudulently made a false certification under penalty of perjury, made in relation to Debtor Plaintiff's case.

3.  Defendants Leslie Tamboer and Leonard Tamboer knowingly and fraudulently presented a false claim of $182,000 to [the] Bankruptcy Court.

4.  Defendants Leslie Tamboer and Leonard Tamboer attempted to obtain property title by forbearing to act (deed in lieu) in Debtor Plaintiff's case knowingly and fraudulently.

5.  Defendant Leslie Tamboer knowingly and fraudulently attempted to have Joseph Kelly (buyer) join in a conspiracy (Fact #1).

6.  There were multiple predicate acts (Facts #1 thru Fact #6).

7.  Predicate acts occurred over several years.

8.  Predicate acts inflicted repeated economic injury to Plaintiff.

9.  Predicate acts deprived Plaintiff of his property and liberty interests.

10. Plaintiff Richard Mullarkey believes Facts #1 thru #9 set a basis for RICO action.[9]

11. John McKenna, esq. had received evidence of the criminal intent of his clients, Defendants Leslie Tamboer and Leonard Tamboer, Exhibits A, B, C + D.

12. David Gherlone, Esq. had received evidence of the criminal intent of his clients, Defendants Leslie Tamboer and Leonard Tamboer, Exhibits A, B, C.

13. Attorneys John McKenna and David Gherlone authored the false statements to [the] Bankruptcy Trustee and Bankruptcy Court made to cover up the criminal intent of Defendants Leslie Tamboer and Defendant Leonard Tamboer.

14. Exhibits A, B, C, D attached.

The allegations set forth above are "mere conclusory statements," and therefore are not sufficient to state a cognizable claim. Iqbal, 129 S. Ct. at 1949. Mr. Mullarkey's Amended Complaint includes no information as to which of the statements made to the Bankruptcy Court by the Appellees were allegedly untruthful. Nor does it detail how the Appellees supposedly concealed $375,000 of Mr. Mullarkey's assets from the Bankruptcy Court or the nature of the various "predicate acts" alluded to in support of its claims that the Appellees were involved in an ongoing conspiracy. The exhibits attached to the Amended Complaint – which include (Ex. A) a certification from Mr. Mullarkey's wife in which she gave information (which would constitute inadmissible hearsay at trial) about a conversation between Mr. Mullarkey and Leonard Tamboer, but did not include facts tending to show fraud or a conspiracy, (Ex. B) a certification from Kevin Hynes stating that he and his business partner had, at one point, been willing to purchase Princeton Estates, (Ex. C) a fairly innocuous letter from Mr. Gherlone to the state court presiding over the foreclosure proceedings, in which he argued that the stay of foreclosure

---

[9] As discussed above, the Court of Appeals held in its prior Opinion that Mr. Mullarkey's allegations did not state a cognizable RICO claim. Id. at 224 n.7. Therefore, any claim by Mr. Mullarkey that the Appellees' conduct violated RICO has been previously dismissed, and need not be addressed in this ruling.

should be lifted, and (Ex. D) a certification from Leonard Tamboer seeking the same relief –
shed no light on those questions.

Nor do Mr. Mullarkey's various submissions to the Bankruptcy Court and letters to this
Court in connection with the pending appeal set forth sufficient factual allegations to sustain his
claims.  To the contrary, as set forth above, Mr. Mullarkey's correspondence has included only
conclusory statements that the Appellees violated his rights and are "making a mockery out of
the justice system."  In repeatedly demanding that he be given an immediate trial or the ultimate
relief sought by his Amended Complaint in the form of the return of Princeton Estates to the
bankruptcy estate, Mr. Mullarkey fundamentally misconstrues the prior decision by the Court of
Appeals.  That ruling held only that his claims were not barred by collateral estoppel or res
judicata.  Mullarkey, 536 F.3d at 226 ("The Bankruptcy Court's reliance on its stay proceedings
to support preclusion, either by res judicata or collateral estoppel, was error.").  It advanced no
opinion on the issue of whether those claims included sufficient factual allegations to survive a
motion to dismiss and proceed to trial.  Id. at 237.  In light of the conclusory nature of Mr.
Mullarkey's assertions, Iqbal requires the dismissal of his claims; any trial in this matter would
amount to nothing more than a "fishing expedition" in which the Appellees would be subjected
to the considerable expense of defending themselves against assertions that are so confusing as to
preclude the preparation of an effective defense, and lack any indicia of merit.

As discussed above, Mr. Mullarkey has been given numerous opportunities to amend or
clarify his claims.  He has refused to do so, and has caused undue delay by repeatedly submitting
letters outlining the same conclusory allegations of wrongdoing.  Therefore, even if the Court
were to grant reconsideration of its September 10, 2009 Order dismissing Mr. Mullarkey's
appeal for failure to comply with Bankruptcy Rule 8006, it would be faced a situation in which

Mr. Mullarkey's allegations are not sufficient to state a claim and granting leave to amend those allegations would be inappropriate.  See Burlington Coat Factory, 114 F.3d at 1435 (stating that a court need not grant leave to amend in cases where the plaintiff ahs failed to state a claim after repeated attempts or caused undue delay).  Therefore, if the Court were to address the merits of Mr. Mullarkey's allegations, those claims would be dismissed with prejudice.

## C. Appeal from the Bankruptcy Court's January 12, 2005 Order Refusing to Join Mr. Kartzman and Mr. Gherlone

For the same reason, the Bankruptcy Court's refusal of Mr. Mullarkey's motions to join Mr. Gherlone and Mr. Kartzman as defendants will be affirmed.  As discussed above, Mr. Mullarkey has not set forth sufficient factual allegations to sustain a claim against any individual. Mr. Kartzman is not even mentioned in Mr. Mullarkey's Amended Complaint, while the accusations made against Mr. Gherlone are mere conclusory recitations of legal standards disguised as factual allegations.  See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot form the basis of a cognizable claim.).

### III.  CONCLUSION

For the reasons set forth above, Mr. Mullarkey's Motion for Reconsideration of this Court's September 10, 2009 Order dismissing his appeal is denied.  The Bankruptcy Court's January 12, 2005 Orders denying Mr. Mullarkey's four motions are affirmed.  Mr. Mullarkey's claims are dismissed with prejudice in their entirety, and the adversary proceeding below shall be closed.

 

 

 

  *s/Dickinson R. Debevoise*_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: December 23, 2009